Slip Op. 19-41

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>and<br><br>**ZEKELMAN INDUSTRIES,**<br><br>**Defendant-Intervenor.** | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 17-00018 |

**OPINION AND ORDER**

[Sustaining in part and remanding in part the U.S. Department of Commerce's remand redetermination in the 2014–2015 administrative review of the antidumping duty order on welded carbon steel standard pipe and tube products from Turkey.]

Dated: April 1, 2019

David L. Simon, Law Office of David L. Simon, of Washington, D.C., for Plaintiff Tosçelik Profil ve Sac Endüstrisi A.Ş.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Catherine D. Miller, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Roger B. Schagrin and Paul W. Jameson, Schagrin Associates, of Washington, D.C., for Consolidated Plaintiff and Defendant-Intervenor Zekelman Industries. Christopher T. Cloutier and Elizabeth J. Drake also appeared.

Choe-Groves, Judge:  This case involves steel products from Turkey.  Plaintiff Tosçelik Profil ve Sac Endüstrisi A.Ş. ("Tosçelik") and Consolidated Plaintiff and Defendant-Intervenor Zekelman Industries ("Zekelman") initiated this action contesting the final results of the administrative review of welded carbon steel standard pipe and tube products from Turkey, in which the U.S. Department of Commerce ("Commerce" or "Department") found that the products at issue are being, or are likely to be, sold in the United States at less-than-fair value. See Welded Carbon Steel Standard Pipe and Tube Products From Turkey, 81 Fed. Reg. 92,785 (Dep't Commerce Dec. 20, 2016) (final results of administrative review; 2014–2015), as amended, 82 Fed. Reg. 11,002 (Dep't Commerce Feb. 17, 2017) (amended final results of antidumping duty administrative review; 2014–2015) (collectively, "Final Results").  Before the court are the Final Results of Redetermination Pursuant to Court Remand, Oct. 4, 2018, ECF No. 62-1 ("Remand Results"), filed by the Department as directed in the court's prior opinion. See Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States, 42 CIT __, 321 F. Supp. 3d 1270 (2018) ("Tosçelik I").  For the reasons discussed below, the court concludes that Commerce's modified calculation of Tosçelik's duty drawback adjustment is not in accordance with the law and sustains Commerce's explanation of Tosçelik's circumstances of sale adjustment for warehousing expenses.  The Remand Results are remanded for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

The court presumes familiarity with the facts of this case. See Tosçelik I.  The court remanded the Final Results for Commerce to reconsider (1) its calculation of Tosçelik's duty

drawback adjustment and (2) its grant of a circumstances of sale adjustment to Tosçelik for warehousing expenses. See id. at __, 321 F. Supp. 3d at 1281.

Commerce filed its Remand Results under protest on October 4, 2018. See Remand Results at 2. Commerce recalculated Tosçelik's duty drawback adjustment by allocating import duties exempted by reason of export of finished product over total exports, as reported by Tosçelik. See id. at 14. Because Commerce perceived an imbalance in its comparison between Tosçelik's export price and normal value, Commerce made an additional circumstances of sale adjustment. See id. at 12, 14. Commerce explained also its grant of a circumstances of sale adjustment to Tosçelik for warehousing expenses. See id. at 14–17. Pursuant to Commerce's modified calculations, Tosçelik's weighted-average dumping margin changed from 3.40% in the Final Results to 3.33% in the Remand Results. Id. at 39.

Tosçelik filed comments on the Remand Results. See Comments Pl. Tosçelik Profil ve Sac Endüstrisi A.Ş. Final Results Redetermination Pursuant Remand, Nov. 4, 2018, ECF No. 64 ("Pl.'s Comments"). Defendant filed a response to Tosçelik's comments. See Def.'s Resp. Comments Remand Redetermination, Dec. 19, 2018, ECF No. 68 ("Def.'s Resp."). Zekelman also filed a response to Tosçelik's comments. See Def.-Intervenor Zekelman Industries' Reply Comments Tosçelik Final Results Redetermination Pursuant Remand, Dec. 19, 2018, ECF No. 67.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). The court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial

evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

### I.  Duty Drawback Adjustment

If Commerce finds that merchandise is being sold at less than fair value, Commerce issues an antidumping duty order imposing antidumping duties equivalent to the amount by which the normal value exceeds the export price for the merchandise. See 19 U.S.C. § 1673. Export price, or U.S. price, is the price at which the subject merchandise is first sold in the United States. See id. § 1677a(a). A duty drawback adjustment is an adjustment to export price—specifically, an increase by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." Id. § 1677a(c)(1)(B). The purpose of the adjustment is to correct an imbalance and prevent an inaccurately high dumping margin by increasing export price to the level it likely would be absent a duty drawback.

Normal value represents, on the other hand, the price at which the subject merchandise is sold in the exporting country. See id. § 1677b(a)(1)(A). When determining the appropriate price for comparison, Commerce may make certain price adjustments, such as a circumstances of sale adjustment. See id. § 1677b(a)(6). The price may be:

> (C) increased or decreased by the amount of any difference (or lack thereof) between the export price or constructed export price and the price described in paragraph (1)(B) (other than a difference for which allowance is otherwise provided under this section) that is established to the satisfaction of the administering authority to be wholly or partly due to--
>
>    (iii) other differences in the circumstances of sale.

Id. § 1677b(a)(6)(C)(iii). The purpose of statutory adjustments to normal value is so Commerce can "ensure[] that there is no overlap or double-counting of adjustments." H.R. Rep. No. 103-826, pt. 1, at 84–85 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 3857–58.

On remand, Commerce continued to grant Tosçelik a duty drawback adjustment, but calculated the amount based on Tosçelik's reported duties exempted by reason of export of finished product over total exports. See Remand Results at 14. Tosçelik does not contest this aspect of the recalculation. See Pl.'s Comments 2. Tosçelik challenges Commerce's subsequent circumstances of sale adjustment. Tosçelik argues that this increase to normal value nullifies the duty drawback adjustment. See id.

In the Remand Results, Commerce added to Tosçelik's normal value the difference between Tosçelik's claimed per-unit amount of duty drawback adjustment and the per-unit amount of import duties reported in Tosçelik's cost of production. See Remand Results at 12. In substantiating the additional circumstances of sale adjustment, Commerce continued to rely on a reading of Saha Thai Steel Pipe (Public) Co. Ltd. v. United States, 635 F.3d 1335 (Fed. Cir. 2011) ("Saha Thai"), that the court disapproved of in Tosçelik I. See Remand Results at 6–12. Both the Remand Results and Defendant's comments in support of the Remand Results rely on language from Saha Thai discussing why export price, cost of production, and constructed value "should be increased together, or not at all" in order to achieve a "duty-neutral" comparison. See Remand Results at 8, 11 n.36; Def.'s Resp. 7–8. This reference to Saha Thai is taken out of context. As explained by the court before, the quoted passage in Saha Thai relates "to an adjustment to normal value with respect to the particular facts, exemption program, and recordkeeping practices presented in Saha Thai, and should not be expanded to encompass all

duty drawback adjustment calculations made by Commerce." Tosçelik I, 42 CIT at __, 321 F. Supp. 3d at 1277. When viewed in this context, Saha Thai "does not support Commerce's methodology in the instant matter before this court." Id. at 1278. Commerce's explanation for the additional circumstances of sale adjustment is unreasonable in light of the court's previous interpretation of Saha Thai.

The court reiterates that Commerce's reliance on Saha Thai is misplaced. Saha Thai concerned Commerce's separate calculations of U.S. price and of cost of production and constructed value. Generally, Commerce makes a duty drawback adjustment to a respondent's U.S. price to account for duties rebated and exempted by reason of exportation of the finished product to the United States. Commerce makes a separate adjustment to a respondent's cost of production and constructed value to reflect import duties incurred when the finished product is sold in the home market. See, e.g., Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi A.Ş. v. United States, Slip Op. 19-10, 2019 WL 413800, at *3–4 & n.8 (distinguishing Commerce's duty drawback adjustment to U.S. price, which the opinion refers to as the "sales-side adjustment," and Commerce's adjustment to cost of production and constructed value, which the opinion refers to as the "cost-side adjustment"). Saha Thai sustained Commerce's utilization of these two corresponding adjustments but did not hold that the two adjustments should be "equal" or "duty neutral," as Commerce and Defendant continue to espouse here. Saha Thai does not support Commerce's Remand Results.

Commerce reasoned in the Remand Results that the additional circumstances of sale adjustment was necessary to correct a perceived imbalance in the dumping margin calculation.

See Remand Results at 11–12. Commerce again departs from the legislative purpose of 19 U.S.C. § 1677a(c)(1)(B). As stated in the court's previous Opinion and Order:

> The purpose of a duty drawback adjustment is to ensure a fair comparison between normal value and export price. Under a duty drawback program, a producer may receive an exemption or rebate from their home government for duties on imported inputs used to produce merchandise that is subsequently exported to the U.S. As a result, producers are still required to pay import duties for domestically-sold goods, which leads to an increase in normal value. A duty drawback adjustment corrects this imbalance, which could otherwise lead to an inaccurately high dumping margin, by increasing [export price] to the level it likely would be absent the duty drawback.

Tosçelik I, 42 CIT at __, 321 F. Supp. 3d at 1275 (internal citations and quotations omitted). The upward adjustment to export price contemplated by 19 U.S.C. § 1677a(c)(1)(B) aids Commerce's statutory duty to make a fair comparison between normal value and export price in antidumping duty investigations. Commerce's action on remand here negates the statutory duty drawback adjustment that Tosçelik earned by exporting its finished product to the United States and impinges on the agency's ability to make a fair comparison. The court concludes that the Remand Results are not in accordance with the law and remands this case for a second redetermination.

Tosçelik also contends that the Remand Results are not supported by substantial evidence. Defendant argues that because Tosçelik failed to raise this issue in administrative proceedings before Commerce, it cannot assert it before the court under the doctrine of exhaustion of administrative remedies. Because the court remands the Remand Results to Commerce for a second redetermination, the court need not reach this argument.

Consol. Court No. 17-00018						Page 8

## II. Circumstances of Sale Adjustment for Warehousing Expenses

Commerce granted Tosçelik a circumstances of sale adjustment for Tosçelik's warehousing expenses in the Final Results. Zekelman argued that Commerce's decision was unsupported by substantial evidence because Commerce failed to address contrary evidence on the record allegedly showing that Tosçelik overstated its warehousing expenses in its questionnaire responses. The court agreed with Zekelman and remanded the Final Results for Commerce to "adequately address contrary evidence on the record and provide clear and discernable reasons for its decision." Tosçelik I, 42 CIT at __, 321 F. Supp. 3d at 1281.

On remand, Commerce continued to grant Tosçelik a circumstances of sale adjustment for warehousing expenses. See Remand Results at 16–17. Relying on Tosçelik's September 28, 2015 Section B Questionnaire Response and March 28, 2016 Supplemental Questionnaire Response, Commerce found that Tosçelik did not overstate its warehousing expenses. See id. at 16. Tosçelik's requested adjustment was based on data reflecting "the greatest level of detail maintained in Tosçelik's accounting records." Id. at 15. The accounting records showed the total quantity of goods shipped at the warehouse. See id. Tosçelik removed scrap generation expenses that related exclusively to cut-to-length services, which do not qualify as warehousing expenses, from its requested adjustment. See id. Commerce reasonably relied on Tosçelik's questionnaire responses, and therefore the court concludes that Commerce's grant of circumstances of sale adjustment is supported by substantial evidence. Commerce's grant of circumstances of sale adjustment for warehousing expenses is sustained.

## CONCLUSION

For the aforementioned reasons, the court concludes that Commerce's modified calculation of Tosçelik's duty drawback adjustment is not in accordance with the law, and remands the Remand Results for a second redetermination. The court sustains Commerce's explanation of Tosçelik's circumstances of sale adjustment for warehousing expenses. Accordingly, it is hereby

**ORDERED** that the Remand Results are remanded to Commerce for further proceedings; and it is further

**ORDERED** that Commerce shall file the second remand redetermination by May 16, 2019; and it is further

**ORDERED** that Commerce shall file the administrative record on the second remand redetermination by May 30, 2019; and it is further

**ORDERED** that comments in opposition to the second remand redetermination shall be filed by June 17, 2019; and it is further

**ORDERED** that comments in support of the second remand redetermination shall be filed by July 17, 2019; and it is further

**ORDERED** that the joint appendix for the second remand redetermination shall be filed by August 16, 2019.

    /s/ Jennifer Choe-Groves
    Jennifer Choe-Groves, Judge

Dated: April 1, 2019
    New York, New York