Slip Op. 19-166

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş.,**<br><br>Plaintiff,<br><br>and<br><br>**ZEKELMAN INDUSTRIES,**<br><br>Consolidated Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**ZEKELMAN INDUSTRIES,**<br><br>Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 17-00018 |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's second remand results.]

Dated: December 18, 2019

David L. Simon, Law Office of David L. Simon, of Washington, D.C., for Plaintiff Tosçelik Profil ve Sac Endüstrisi A.Ş.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the briefs were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, and Patricia M. McCarthy, Assistant Director. Of counsel was David W. Richardson, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Roger B. Schagrin and Paul W. Jameson, Schagrin Associates, of Washington, D.C., for Consolidated Plaintiff and Defendant-Intervenor Zekelman Industries.

Choe-Groves, Judge:  This action arises out of the final results of the administrative review of welded carbon steel standard pipe and tube products from Turkey.  See Welded Carbon Steel Standard Pipe and Tube Products From Turkey, 81 Fed. Reg. 92,785 (Dep't Commerce Dec. 20, 2016) (final results of administrative review; 2014–2015), as amended, 82 Fed. Reg. 11,002 (Dep't Commerce Feb. 17, 2017) (amended final results of antidumping duty administrative review; 2014–2015).  Before the court are the Final Results of Redetermination Pursuant to Second Court Remand, May 30, 2019, ECF No. 67–1 ("Second Remand Results").  For the reasons discussed below, the Second Remand Results are remanded for further proceedings consistent with this opinion.

## BACKGROUND

The court presumes familiarity with the facts and procedural history of this action.  See Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States, 42 CIT __, 321 F. Supp. 3d 1270 (2018) ("Tosçelik I"); Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States, 42 CIT __, 375 F. Supp. 3d 1312 (2019) ("Tosçelik II").  In Tosçelik I, the court remanded to Commerce for reconsideration of Tosçelik's duty drawback adjustment and the circumstance of sale adjustment as to warehousing expenses.  Tosçelik I at 1281.

After the first remand, Commerce recalculated Tosçelik's duty drawback adjustment by allocating import duties exempted by reason of export of finished product over total exports, as reported by Tosçelik.  Tosçelik II at 1314.  Because Commerce perceived an imbalance in its comparison between Tosçelik's export price and normal value, Commerce made an additional

circumstance of sale adjustment.  Id.  Commerce also granted a circumstance of sale adjustment to Tosçelik for warehousing expenses.  Id. at 1316–17.  The court concluded that Commerce's modified calculation of Tosçelik's duty drawback adjustment was not in accordance with the law, but sustained Commerce's circumstance of sale adjustment for warehousing expenses.  Id. at 1317.  The court remanded to Commerce for further proceedings.  Id.

In the Second Remand Results, Commerce "amended its duty drawback calculation methodology . . . to ensure that [Commerce's] dumping calculation is duty neutral, meaning that the same amount of duties are accounted for on both sides of the dumping equation," by: "(1) making a per-unit adjustment to U.S. price in the full amount of the per-unit duty drawback granted on export, as claimed by Tos[ç]elik; and (2) making a circumstance of sale . . . adjustment to [constructed value] and home market price to add the same amount of the per-unit amount of import duties added to U.S. price."  Second Remand Results at 1–2.

Tosçelik filed comments on the Second Remand Results.  Comments Pl. Tosçelik Profil ve Sac Endüstrisi A.Ş. Final Results Redetermination Pursuant to Second Remand, Jul. 31, 2019, ECF No. 82 ("Pl.'s Comments").  Zekelman filed comments in opposition.  Def.-Intervenors' Comments in Opp'n to the Second Remand Redetermination, Jul. 31, 2019, ECF No. 81.  Defendant responded.  Def.'s Resp. to Comments on Second Remand Results, Aug. 30, 2019, ECF No. 85 ("Def.'s Reply").  The Parties filed a joint appendix.  J.A., Sept. 12, 2019, ECF No. 87.  The Parties filed supplemental briefing on December 6, 2019.  Def.-Intervenors' Suppl. Br., Dec. 6, 2019, ECF No. 89; Pl.'s Suppl. Br., Dec. 6, 2019, ECF No. 90; Def.'s Suppl. Br., Dec. 6, 2019, ECF No. 91.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). The court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i). The results of a redetermination pursuant to court remand are reviewed also for compliance with the court's remand order. See ABB Inc. v. United States, 42 CIT __, __, 355 F. Supp. 3d 1206, 1210 (2018).

## ANALYSIS

If Commerce finds that merchandise is being sold at less than fair value, Commerce issues an antidumping duty order imposing antidumping duties equivalent to the amount by which the normal value exceeds the export price for the merchandise. See 19 U.S.C. § 1673; see also 19 U.S.C. § 1675. Export price, or U.S. price, is the price at which the subject merchandise is first sold in the United States. See id. § 1677a(a). A duty drawback adjustment is an adjustment to export price, specifically, an increase by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." Id. § 1677a(c)(1)(B).

Generally, normal value represents the price at which the subject merchandise is sold in the exporting country. See id. § 1677b(a)(1)(A). When determining the appropriate price for comparison, Commerce may make certain price adjustments, such as a circumstance of sale adjustment. See id. § 1677b(a)(6). Under the statute, the price may be:

> (C) increased or decreased by the amount of any difference (or lack thereof) between the export price or constructed export price and the price described in paragraph (1)(B) (other than a difference for which

> allowance is otherwise provided under this section) that is established to the satisfaction of the administering authority to be wholly or partly due to– . . .
>
>    (iii) other differences in the circumstances of sale.

Id. § 1677b(a)(6)(C)(iii). The purpose of statutory adjustments to normal value is to "ensure[] that there is no overlap or double-counting of adjustments." H.R. Rep. No. 103-826, pt. 1, at 84–85 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 3857–58.

Pursuant to 19 C.F.R. § 351.410(b), "the Secretary will make circumstances of sale adjustments under section 773(a)(6)(C)(iii) of the Act [19 U.S.C. § 1677b(a)(6)(C)(iii)] only for direct selling expenses and assumed expenses." 19 C.F.R. § 351.410(b). Direct selling expenses are "expenses, such as commissions, credit expenses, guarantees, and warranties, that result from, and bear a direct relationship to, the particular sale in question." Id. § 351.410(c). Assumed expenses are "selling expenses that are assumed by the seller on behalf of the buyer, such as advertising expenses." Id. § 351.410(d).

### I. Commerce's Duty Drawback Adjustment

In the Second Remand Results, Commerce readdressed Tosçelik's request for a duty drawback adjustment pertaining to the Turkish IPR program, which is a duty exemption program. Second Remand Results at 16. Commerce explained that "since Tos[ç]elik never actually paid or recorded any duty costs associated with the [Turkish] IPR exemption program, there is no duty in [the] constructed value or home market price associated with this program, and no need to adjust Tos[ç]elik's cost of production," but, "[u]nder the IPR exemption program[,] . . . an off the books liability was generated when inputs were imported under the IPR program and that liability was later reversed upon exportation of subject merchandise to the

United States and other markets." Id. at 16–17 (internal quotation marks omitted). As a result, Commerce made "a per-unit adjustment to U.S. price in the full amount of the per-unit duty drawback granted on export, as claimed by Tos[ç]elik." Id. at 1–2. Tosçelik does not contest this duty drawback adjustment. Pl.'s Cmts. at 22.

Under 19 U.S.C. § 1677a(c)(1)(B), a duty drawback adjustment is an adjustment to export price, i.e., an increase by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). Because Commerce's calculation and explanation of the duty drawback adjustment is in accordance with 19 U.S.C. § 1677a(c)(1)(B), the court concludes that Commerce's duty drawback adjustment to U.S. price is in accordance with the law.

II.     **Commerce's Circumstance of Sale Adjustment**

On remand, Commerce made a circumstance of sale adjustment "to add the same per-unit duty amount to home market price and [constructed value] as that [was] granted [to] Tos[ç]elik for the full amount of duties that were drawn back or forgiven by virtue of the export of the merchandise to the United States under the IPR exemption program." Second Remand Results at 17. On remand, Commerce contends that this circumstance of sale adjustment "account[s] for the . . . imbalance between the amount of the claimed duty drawback and the absence of any import duty costs included in normal value." Id. at 7. Commerce claims the circumstance of sale adjustment supports a fair comparison between the U.S. price and the constructed value because: (1) "the import duty program and drawback provision impose a different set of accounting and duty treatments dependent upon the market to which the finished good was sold,"

and (2) there were three conditions that required a circumstance of sale adjustment. See id. at 14–15. Those conditions include: the input source market, "the effect of the different sourcing of inputs and associated duty costs," and the differences between the U.S. and the home market in duty drawback treatment. Id. at 14–15.

Plaintiff contends that the law does not require a duty-neutral outcome and that Commerce cannot use a circumstance of sale adjustment here because the use of a circumstance of sale adjustment is restricted to the direct selling expenses context. Pl.'s Cmts. at 4. Defendant argues that Commerce's circumstance of sale adjustment eliminates the perception of double counting, supports a fair comparison between export price and normal value, and is permitted because "the operation of Turkey's duty drawback scheme and the antidumping duty law duty drawback provision[] transform the import duties subject to the duty drawback scheme into a direct selling expense." Def.'s Reply at 6, 8–9.[1]

Defendant-Intervenors argue that Commerce should make an adjustment to the cost of production for uncollected duties. Def-Intervenors' Cmts. at 1. Defendant-Intervenors' argument "rel[ies] on a reading of Saha Thai Steel Pipe (Public) Co. Ltd. v. United States, 635 F.3d 1335 (Fed. Cir. 2011)[] that the court disapproved of in Tosçelik I." Tosçelik II at 1315. On remand, Commerce removed the adjustment to cost of production that Defendant-Intervenor now seeks to reintroduce. Commerce's removal of this adjustment to cost of production on

---

[1] Defendant-Intervenors add that although "[t]he purpose of the duty drawback adjustment as stated in Tosçelik II may not require that the two adjustments should be equal or duty neutral, . . . the purpose of the duty drawback adjustment as stated in Saha Thai does require duty neutrality." Def-Intervenors' Cmts. at 4 (emphasis in original) (quotation marks omitted).

remand is in accordance with Tosçelik II and the court sustains Commerce's removal of the adjustment to cost of production. Tosçelik II at 1315.

**A. Commerce's Circumstance of Sale Adjustment Negates the Duty Drawback Adjustment**

Defendant's and Defendant-Intervenors' arguments as to the perception of double counting lack merit. First, despite its claims to the contrary, Commerce made a circumstance of sale adjustment not for the purpose of preventing the double-counting of adjustments. Second Remand Results at 17. The purpose of statutory adjustments to normal value is so Commerce can "ensure[] that there is no overlap or double-counting of adjustments." H.R. Rep. No. 103–826, pt. 1, at 84–85 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 3857–58; Tosçelik II at 1315. Commerce fails to explain how the circumstance of sale adjustment prevents double-counting of adjustments when only Tosçelik's duty drawback adjustment is at issue.

Second, the circumstance of sale adjustment does not remedy an imbalance; it negates the duty drawback adjustment. Defendant concedes that the circumstance of sale adjustment negates the duty drawback adjustment. Second Remand Results at 1–2 (noting that Commerce made "a circumstance of sale . . . adjustment to [constructed value] and home market price to add the same amount of the per-unit amount of import duties added to U.S. price."). Commerce is not permitted to "use the [circumstance of sale] provision to effectively writ[e] [a separate adjustment] section out of the statute." Habaş Sinai Ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States, 2019 WL 5270152, at *22 (CIT 2019) (internal quotation marks omitted) ("Habaş II"); see also Zenith Electronics Corp. v. United States, 988 F.2d 1573, 1581 (Fed. Cir. 1993). The upward adjustment to constructed value contemplated by 19 U.S.C. § 1677b(a)(6)(C)(iii)

aids Commerce's statutory duty to make a fair comparison between normal value or constructed value and export price. Because Commerce's circumstance of sale adjustment negates the statutory duty drawback adjustment, the court concludes that Commerce's circumstance of sale adjustment is not in accordance with the law.

### B. Commerce's Circumstance of Sale Adjustment Is Not Supported By 19 C.F.R. § 351.410

Defendant's argument as to the treatment of duty drawback as a direct selling expense is unavailing. Commerce's circumstance of sale adjustment does not result from circumstances concerning the sale of merchandise because "[t]he duty drawback adjustment resulted from the operation of law." See Habaş II at *21–22, *26. A duty is an expense unlike "commissions, credit expenses, guarantees, and warranties" and further is not "assumed by the seller on behalf of the buyer, such as advertising expenses." 19 C.F.R. §§ 351.410(c) and (d). The duty imposed in this matter is therefore neither a direct selling expense nor an assumed expense as defined in 19 C.F.R. § 351.410. Because the adjustment at issue concerns the imposition of a duty, not a circumstance of sale, the court concludes that Commerce's explanation for the circumstance of sale adjustment is not in accordance with the law. Compare 19 U.S.C. § 1677a(c)(1)(B) with 19 C.F.R. §§ 351.410(b), (c), and (d) (identifying types of expenses properly subject to a circumstance of sale adjustment).

## CONCLUSION

Because Commerce's circumstance of sale adjustment negates the duty drawback adjustment and Commerce incorrectly treats the duty drawback as a direct selling expense, the court concludes that the circumstance of sale adjustment is not in accordance with the law.

For the foregoing reasons, the court sustains Commerce's duty drawback adjustment and remands to Commerce for future proceedings in accordance with this opinion. Accordingly, it is hereby

**ORDERED** that the duty drawback adjustment is sustained; and it is further

**ORDERED** that the <u>Second Remand Results</u> are remanded to Commerce for further proceedings; and it is further

**ORDERED** that this action shall proceed in accordance with the following schedule:

1. Commerce shall file its remand determination on or before February 18, 2020;

2. Commerce shall file the administrative record on or before March 4, 2020;

3. Parties' comments in opposition to the remand determination shall be filed on or before March 20, 2020;

4. Parties' comments in support of the remand determination shall be filed on or before April 20, 2020;

   and

5. The Joint Appendix shall be filed on or before May 4, 2020.

　/s/ Jennifer Choe-Groves　
Jennifer Choe-Groves, Judge

Dated: 　December 18, 2019　
　　　　New York, New York